**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| COSTAS STAMATIADES, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTELIQUENT, INC. f/k/a NEUTRAL TANDEM, INC., G. EDWARDS EVANS, ROBERT JUNKROSKI, and DAVID ZWICK,<br><br>Defendants, | Civil Action No.:<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Costas Stamatiades ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Inteliquent, Inc. f/k/a Neutral Tandem, Inc. ("Inteliquent" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than defendants who purchased Inteliquent securities between May 7, 2012 and August 7, 2013, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 against the Company and certain of its top officials.

2. Inteliquent provides tandem interconnection services. The Company provides its services to carriers and service providers, including wireless, wireline, cable telephony and Voice over Internet Protocol companies.

3. Throughout the Class Period the Company lacked adequate internal controls over its financial reporting, and provided false and misleading forecasts of its financial results. In addition, the Company materially misstated an impairment charge of $78.1 million for the fiscal year ended December 31, 2012. In a blatant example of the Company's misleading forecasting, on July 15, 2013, less than four weeks before the Company announced the need for an investigation into its financial forecasting practices, the Company predicted net income of $22.2 million and adjusted EBITDA of $59.5 million for fiscal year 2013. On this news, the Company's stock skyrocketed 39%, to close at $8.50 per share on July 15, 2013.

4. On August 8, 2013, the Company disclosed that, during the second quarter of 2013, the it had determined that the Audit Committee would conduct an "internal investigation of whether [an] impairment charge was overstated" in addition to the Company's "forecasting practices during the fourth quarter of 2012 and the first quarter of 2013."

5. On this news, Inteliquent securities declined $1.72 per share or over 21%, to close at $6.29 per share on August 8, 2013.

6. Throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) the Company misstated the impairment of goodwill, intangibles and long-lived assets; (2) the Company had improper financial forecasting practices; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

7. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

10. Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b) as the Company is headquartered in this District.

11. In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12. Plaintiff, as set forth in the attached Certification, purchased Inteliquent securities at artificially inflated prices during the Class Period, and was damaged upon the announcement of the alleged corrective disclosure.

13. Defendant Inteliquent is a Delaware corporation with its headquarters located at 550 W. Adams Street, Suite 900, Chicago, IL 60661. Its common stock is traded on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol "IQNT."

14. Defendant G. Edward Evans ("Evans") has served at all relevant times as the Company's Chief Executive Officer.

15. Defendant Robert Junkroski ("Junkroski") served as the Company's Chief Financial Officer from the beginning of the Class Period through September 2012.

16. Defendant David Zwick ("Zwick") has served as the Company's Executive Vice President and Chief Financial Officer since October 2012.

17. The defendants referenced above in ¶¶ 13 - 15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18. Inteliquent provides voice, IP Transit, and Ethernet telecommunications services primarily on a wholesale basis. The Company offers these services using an all-IP network, which enables it to deliver global connectivity for a variety of media, including voice, data and video.

4

**Materially False and Misleading
Statements Issued During the Class Period**

19. On May 7, 2012, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2012. For the quarter, the Company reported net income of $6.7 million, or $0.21 diluted earnings per share ("EPS") and revenue of $70.7 million, compared to net income of $8.2 million or $0.24 diluted EPS and revenue of $66.4 million for the same period a year ago.

20. On May 9, 2012, the Company filed a quarterly report for the period ended March 31, 2012 on a Form 10-Q with the SEC signed by Defendants Evans and Junkroski and reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Evans and Junkroski stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

21. On August 7, 2012, the Company issued a press release announcing its financial results for the second quarter ended June 30, 2012. For the quarter, the Company reported net income of $3.7 million, or $0.12 diluted EPS and revenue of $68.3 million, compared to net income of $7.1 million or $0.20 diluted EPS and revenue of $65.1 million for the same period a year ago.

22. On August 9, 2012, the Company filed a quarterly report for the period ended June 30, 2012 on a Form 10-Q with the SEC signed by Defendants Evans and Junkroski and reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Evans

and Junkroski stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

23. On November 7, 2012, the Company issued a press release announcing its financial results for the third quarter ended September 30, 2012. For the quarter, the Company reported a net loss of $2.7 million, or ($0.09) diluted EPS and revenue of $68.8 million, compared to net income of $5.8 million or $0.18 diluted EPS and revenue of $67.3 million for the same period a year ago.

24. On November 9, 2012, the Company filed a quarterly report for the period ended September 30, 2012 on a Form 10-Q with the SEC signed by Defendants Evans and Junkroski and reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Evans and Junkroski, stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

25. On March 7, 2013 the Company issued a press release announcing its financial results for the fourth quarter and fiscal year ended December 31, 2012. For the quarter, the Company reported a net loss of $88.9 million, or ($2.76) diluted EPS and revenue of $67.7 million, compared to net income of $6.0 million or $0.19 diluted EPS and revenue of $69.5 million for the same period a year ago. For the year, the Company reported a net loss of $81.3 million, or ($2.55) diluted EPS and revenue of $275.5 million, compared to net income of $27.1 million or $0.82 diluted EPS and revenue of $268.3 million for the same period a year ago.

26. On March 18, 2013, the Company filed an annual report for the period ended December 31, 2012 on a Form 10-K with the SEC signed by, among others, Defendants Evans and Zwick and reiterated the Company's previously reported financial results and financial

position. In addition, the Form 10-K contained signed certifications pursuant to SOX by Defendants Evans and Zwick stating that the financial information contained in the Form 10-K was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

27. The Form 10-K represented the following in relevant part concerning impairment of goodwill and intangibles:

> *Impairment of Long-Lived and Other Assets.* The carrying value of long-lived assets, including amortizable intangible assets and property and equipment, are reviewed whenever events or changes in circumstances indicate that the related carrying amounts may not be recoverable. Impairment is generally determined by comparing projected undiscounted cash flows to be generated by the asset, or appropriate grouping of assets, to its carrying value. If an impairment is identified, a loss is recorded equal to the excess of the asset's net book value over its fair value, and the cost basis is adjusted. Determining the extent of an impairment, if any, typically requires various estimates and assumptions including using management's judgment, cash flows directly attributable to the asset, the useful life of the asset and residual value, if any. When necessary, we use internal cash flow estimates, quoted market prices and appraisals as appropriate to determine fair value. Actual results could vary from these estimates. In addition, the remaining useful life of the impaired asset is revised, if necessary.
>
> The recent decline in our stock price and related market capitalization created an indication of potential impairment. We utilized Accounting Standards Codification 360 Property, Plant and Equipment (ASC 360) guidance to test the long-lived assets for realizability. We determined that the lowest level of our cash flow generation is our reporting units which are the Americas, EMEA and APAC. During ASC 360 Step 1, we compared the undiscounted cash flows attributable to each reporting unit over the projection period of five years based upon the estimated useful life of the primary asset group which was the Company's property and equipment, plus an estimate of terminal value to its book value. The sum of the undiscounted cash flows was less than the carrying value of the net assets for each reporting unit. This indicated that we failed Step 1 and were required to complete Step 2 under ASC 360 guidance that would quantify the impairment amount. During ASC 360 Step 2, we fair valued the assets using three generally considered approaches: the Cost, Income and Market Approaches. Based on the value indications derived from the application of these approaches, an opinion of value was estimated using expert judgment within the confines of the appraisal process. As a result of the Step 2 analysis, we recorded a property and equipment impairment charge of $13.2 million. This impairment was

allocated to the property and equipment on a pro-rata basis using the relative carrying amounts of these assets, except where such allocation would reduce the carrying value of the asset below its fair value. As part of the ASC 360 Step 2, we fair valued our intangible assets. We applied the Excess Earnings Method, a form of the Income Approach, to estimate the value of the customer based intangible assets for each reporting unit. Based on the analysis, we concluded that the intangible assets had no value and accordingly an impairment charge of $25.8 million was recorded. Prior to the impairment charges the intangible assets, which consisted of customer relationships, had a definite life and were amortized on an accelerated basis based on the discounted cash flows recognized over their estimated useful lives (15 years). In addition, during the year ended December 31, 2012, we ceased offering hosted services. As the equipment has no further use in our network, we recorded an asset impairment charge of $2.9 million.

\*\*\*

As of December 31, 2012, the Company did not maintain effective controls over financial reporting for the income tax consequences associated with the impairment of goodwill, intangible and long-lived assets. Specifically, the review performed by our corporate accounting and tax group of the consolidated tax processes and procedures did not provide for adequate and timely identification of the income tax impacts arising from the impairments.

28. On May 1, 2013, the Company issued a press release announcing its financial results for the first quarter ended March 31, 2013. For the quarter, the Company reported net income of $6.9 million, or $0.21 diluted EPS and revenue of $69.7 million, compared to net income of $6.7 million or $0.21 diluted EPS and revenue of $70.7 million for the same period a year ago.

29. On May 8, 2013, the Company filed a quarterly report for the period ended March 31, 2013 on a Form 10-Q with the SEC signed by Defendants Evans and Zwick and reiterated the Company's previously reported financial results and financial position. In addition, the Form 10-Q contained signed certifications pursuant to SOX by Defendants Evans and Zwick stating that the financial information contained in the Form 10-Q was accurate, and disclosed any material changes to the Company's internal control over financial reporting.

8

30. On July 15, 2013 the Company issued a press release, and simultaneously filed with the SEC on Form 8-K, Inteliquent's earnings guidance for the remainder of 2013. The Company forecast net income of $22.2 million and adjusted EBITDA of $59.5 million. On this news the Company's stock shot up by $2.41 per share or 39% to close at $8.50 per share on July 15, 2013.

31. The statements referenced in ¶¶ 18 - 30 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) the Company's impairment of goodwill, intangibles and long-lived assets were materially misstated; (2) the Company had improper financial forecasting practices; (3) the Company lacked adequate internal and financial controls; and (4) as a result of the foregoing, the Company's statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

32. On August 8, 2013, the Company reported preliminary results for the second quarter ended June 30, 2013 and disclosed that "as a result of an ongoing investigation by the Audit Committee" it has postponed its scheduled earnings call for the second quarter 2013. Specifically, the Company disclosed the following in relevant part:

> As previously disclosed in its Annual Report on Form 10-K for the year ended December 31, 2012, Inteliquent reported a $75.3 million impairment charge, and a net loss of $78.1 million, in each case for the year ended December 31, 2012.
>
> During the second quarter of 2013, the Board of Directors of the Company determined that an internal investigation of whether such impairment charge was overstated should be undertaken by the Audit Committee with the assistance of independent outside professionals. During the same time period, the Board of Directors also determined that the Audit Committee, with the assistance of independent outside professionals, should conduct an internal investigation of the Company's financial forecasting practices during the fourth quarter of 2012 and the first quarter of 2013.As a result of the ongoing internal investigation,

Inteliquent has postponed its scheduled second quarter earnings call, which had been set for Thursday, August 8, 2013 at 10:00 a.m. Eastern time.

33. On this news, Inteliquent securities declined $1.72 per share or over 21%, to close at $6.29 per share on August 8, 2013, on high volume of nearly four times its average daily volume.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Inteliquent securities during the Class Period (the "Class"), and were damaged by the alleged corrective disclosures. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Inteliquent securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Inteliquent or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by defendants' acts as alleged herein;

- whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Inteliquent;

- whether the Individual Defendants caused Inteliquent to issue false and misleading financial statements during the Class Period;

- whether defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Inteliquent securities during the Class Period were artificially inflated because of the defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

11

- defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Inteliquent securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased and/or sold Inteliquent securities between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

## COUNT I

### (Against All Defendants For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder)

42. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43. This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

44. During the Class Period, defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Inteliquent securities; and (iii) cause Plaintiff and other members of the Class to purchase Inteliquent securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

45. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Inteliquent securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Inteliquent's finances and business prospects.

46. By virtue of their positions at Inteliquent, defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant

knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

47. Information showing that defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of Inteliquent, the Individual Defendants had knowledge of the details of Inteliquent internal affairs.

48. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Inteliquent. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Inteliquent's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Inteliquent securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Inteliquent's business and financial condition which were concealed by defendants, Plaintiff and the other members of the Class purchased Inteliquent securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by defendants, and were damaged thereby.

49. During the Class Period, Inteliquent securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased shares of Inteliquent

securities at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased said securities, or would not have purchased them at the inflated prices that were paid. At the time of the purchases by Plaintiff and the Class, the true value of Inteliquent securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Inteliquent securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

50. By reason of the conduct alleged herein, defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

51. As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)

52. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. During the Class Period, the Individual Defendants participated in the operation and management of Inteliquent, and conducted and participated, directly and indirectly, in the conduct of Inteliquent's business affairs. Because of their senior positions, they knew the adverse non-public information about Inteliquent's misstatement of income and expenses and false financial statements.

54. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Inteliquent's financial condition and results of operations, and to correct promptly any public statements issued by Inteliquent which had become materially false or misleading.

55. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Inteliquent disseminated in the marketplace during the Class Period concerning Inteliquent's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Inteliquent to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Inteliquent within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Inteliquent securities.

56. Each of the Individual Defendants, therefore, acted as a controlling person of Inteliquent. By reason of their senior management positions and/or being directors of Inteliquent, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Inteliquent to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Inteliquent and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

57. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Inteliquent.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: August 9, 2013

                                    **POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**

                                    s/*Jeremy A. Lieberman*
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

**POMERANTZ GROSSMAN HUFFORD DAHLSTROM & GROSS LLP**
Patrick V. Dahlstrom
Louis C. Ludwig
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184

*Attorneys for Plaintiff*